Docket No. 85835–Agenda 11–March 1999.

SANA JAMIL ABBASI, a Minor, by and Through Her Father and Next Friend, Jamil Abbasi, Appellee, v. PANAGIOTIS

 PARASKEVOULAKOS 
et al.
, Appellants.

Opinion filed July 1, 1999.

CHIEF JUSTICE FREEMAN delivered the opinion of the court:

Plaintiff, Sana Abbasi, through her father, Jamil Abbasi, brought an action in the circuit court of Cook County against defendants, Panagiotis Paraskevoulakos and Katina Paraskevoulakos. Plaintiff sought damages for injuries that she received from ingesting lead-based paint.

The circuit court struck those counts of the complaint that alleged private causes of action based on defendants’ violations of the Lead Poisoning Prevention Act (Act) (410 ILCS 45/1 
et seq
. (West 1996)) and several chapters of the Chicago Municipal Code (City Code) (Chicago Municipal Code, chs. 5–4, 5–12, 7–4, 13–196 (1990)). The appellate court reversed the dismissal. 296 Ill. App. 3d 278.

We allowed defendants’ petition for leave to appeal. 177 Ill. 2d R. 315(a). We hold that neither the Act nor the City Code supports a private cause of action. We reverse the appellate court and remand the cause to the circuit court for further proceedings.

BACKGROUND

In determining whether to allow a motion to dismiss, a court must take as true all well-pled allegations of fact contained in the complaint and construe all reasonable inferences therefrom in favor of the plaintiff. 
Vernon v. Schuster
, 179 Ill. 2d 338, 341 (1997).

Plaintiff’s first-amended complaint alleged as follows. From May 1990 through January 1996, plaintiff was approximately two through six years old. During that time, plaintiff and her family were tenants in an apartment in Chicago; defendants owned and managed the building. Surfaces in the apartment were covered with deteriorated paint containing a dangerously high level of lead. Plaintiff ingested the lead-based paint in the form of dust, flakes, or chips, and was thereby injured.

Counts I through IV of the eight-count complaint were directed against Panagiotis, and counts V through VIII repeated those claims against Katina. Plaintiff pled three general theories of recovery: common law negligence evidenced by violations of the Act and of the City Code, a private cause of action under the Act, and a private cause of action under various chapters of the City Code.

Counts I and V stated a cause of action for negligence. Those counts alleged that defendants owed duties to plaintiff, which defendants breached. Defendants owed plaintiff a duty to maintain the building in a habitable and safe condition, and to exercise reasonable care in owning, managing, and maintaining it. Further, defendants owed plaintiff a duty based on defendants’ actual or constructive knowledge that: (1) the building’s surfaces were covered with lead-based paint; and (2) plaintiff may ingest the paint in the form of dust, flakes, or chips, thereby rendering the paint dangerous to children. See 
Garcia v. Jiminez
, 184 Ill. App. 3d 107, 109-12 (1989).

Defendants knew or should have known about the presence of lead-based paint in the building because, 
inter alia
, in 1992, with defendants’ knowledge, the Chicago Department of Health inspected the building for lead-based paint, and notified defendants that the building contained such paint; the City of Chicago sued defendants for lead-based paint violations; and plaintiff’s family complained to defendants about the condition of the building and, after plaintiff was diagnosed as being lead-

poisoned, complained to defendants about the presence of lead paint.

Defendants breached these duties, 
i.e.
, were negligent, by violating several provisions of the Act and of the City Code. As a proximate result of this breach, plaintiff was injured. Plaintiff sought, 
inter alia
, damages and injunctive relief.

Counts III and VII alleged a private cause of action under the Act. Those counts contained the identical allegations as to duty, and allegations that defendants breached their duty to plaintiff. However, instead of characterizing defendants’ violations of the Act as negligence, those counts simply stated that defendants violated the Act.

Counts II and VI alleged a private cause of action for nuisance under section 5–4–090 of the City Code (Chicago Municipal Code §5–4–090 (1990)). Counts IV and VIII alleged a private cause of action under titles 5, 7, and 13 of the City Code. Similar to counts III and VII, these counts all state that defendants violated various sections of the City Code, without characterizing those violations as negligence.

Defendants answered the negligence counts and moved to dismiss the remaining counts that alleged private causes of action under the Act and the City Code. The circuit court granted defendants’ motion to dismiss. The court found that the Act and the City Code did not give rise to private causes of action, but that their violation could serve as evidence of negligence. The circuit court also found no just reason to delay an appeal of the decision. See 155 Ill. 2d R. 304(a).

The appellate court reversed the dismissal. With one justice dissenting, the appellate court recognized a private cause of action for violation of the Act. 296 Ill. App. 3d at 283-85. The court unanimously recognized a private cause of action for violation of the City Code. 296 Ill. App. 3d at 281-83.

Defendants appeal. We granted the Illinois Trial Lawyers Association leave to file an 
amicus curiae
 brief in support of plaintiff; we also granted the Illinois Association of Realtors leave to file an 
amicus curiae
 brief in support of defendants. 155 Ill. 2d R. 345.

DISCUSSION

This case is before us following the dismissal of plaintiff’s claims pursuant to section 2–615 of the Code of Civil Procedure (735 ILCS 5/2–615 (West 1996)). A section 2–615 motion attacks the legal sufficiency of a complaint. The question presented by a section 2–615 motion to dismiss is whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. A cause of action will not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover. Review is 
de novo
. 
Vernon
, 179 Ill. 2d at 344.

I. Private Right of Action Under the Act

Defendants contend that the appellate court erred in recognizing a private right of action for violation of the Act. The Act restricts the sale and use of lead-bearing products, specifically providing in pertinent part:

“§3. Lead bearing substance use. No person shall use or apply lead bearing substances:

(a) In or upon any exposed surface of a dwelling or dwelling unit;

***

(c) In or upon any fixtures or other objects used, installed, or located in or upon any exposed surface of a dwelling or residential building, or child care facility, or intended to be so used, installed, or located and that, in the ordinary course of use, are accessible to and chewable by children;

***

(e) Within or upon a residential building or dwelling, child care facility, school, playground, park, or recreational area, or other areas regularly frequented by children.” 410 ILCS 45/3 (West 1996).

The Act requires that health care providers or officers report verified cases of lead poisoning to the Illinois Department of Public Health (Department). 410 ILCS 45/7 (West 1996). The Act establishes the responsibilities of the Department in investigating buildings occupied by persons who screen positive for lead poisoning. 410 ILCS 45/8 through 8.2 (West 1996). If the inspection report identifies a lead hazard, the Act requires the building owner to remove, cover, or otherwise deny children access to the leaded surface. 410 ILCS 45/9 (West 1996). Further, the Act specifically requires that all mitigation of lead hazards “shall be accomplished in a manner which will not endanger the health or well-being of residential building or dwelling unit occupants, and will result in the safe removal from the premises, and the safe disposition, of flakes, chips, debris, dust, and other potentially harmful materials.” 410 ILCS 45/11 (West 1996).

The Act provides that its violation, except for the reporting obligation of health care providers, is punishable as a Class A misdemeanor. 410 ILCS 45/12 (West 1996). The Act also provides in pertinent part:

“§15. Other relief. Nothing in this Act shall be interpreted or applied in any manner to defeat or impair the right of any person *** to maintain an action or suit for damages sustained or for equitable relief, or for violation of an ordinance by reason of or in connection with any violation of this Act. The failure to remove lead based substances within the time prescribed by this Act shall be prima facie evidence of negligence in any action brought to recover damages for injuries incurred after the expiration of that period. This Act shall not prohibit any city *** or other political subdivision from enacting and enforcing ordinances establishing a system of lead poisoning control which provide the same or higher standards than those set forth in this Act.” 410 ILCS 45/15 (West 1996).

The controlling legal principles are quite established:

“Implication by a statute of a private right of action is appropriate when: ‘(1) plaintiff is a member of the class for whose benefit the Act was enacted; (2) it is consistent with the underlying purpose of the Act; (3) plaintiff’s injury is one the Act was designed to prevent; and (4) it is necessary to provide an adequate remedy for violations of the Act.’ 
Corgan v. Muehling
 (1991), 143 Ill. 2d 296, 312-13.” 
Rodgers v. St. Mary’s Hospital
, 149 Ill. 2d 302, 308 (1992).

Accord 
Sawyer Realty Group, Inc. v. Jarvis Corp.
, 89 Ill. 2d 379, 391 (1982).

It is unnecessary to analyze in detail all four of these factors as they apply to the Act and to these parties. As this court observed in 
Board of Education v. A, C & S, Inc.
, 131 Ill. 2d 428, 471 (1989): “
Sawyer
 was clear that we will ‘imply a private remedy where there exists a 
clear need
 to effectuate the purpose of an act.’ (Emphasis added.) (89 Ill. 2d at 389.) In this case there does not exist a clear need.” An application of the fourth factor to this case leads to the same conclusion.

We agree with the circuit court that a private right of action under the Act is not appropriate because it is not necessary to provide an adequate remedy for violation of the Act, 
i.e.
, to uphold and implement the public policy behind the Act. 
Cf
. 
Corgan v. Muehling
, 143 Ill. 2d 296, 314-15 (1991); 
Sawyer Realty
, 89 Ill. 2d at 391. A private cause of action under the Act would be identical to plaintiff’s common law negligence action pending in the circuit court.

Section 15 of the Act expressly provides that the Act does not affect the right of an injured person to seek the full range of available judicial relief. Further, the section also provides that the “failure to remove lead based substances within the time prescribed by this Act shall be prima facie evidence of negligence in any action brought to recover damages for injuries incurred after the expiration of that period.” 410 ILCS 45/15 (West 1996). This section reflects settled law. In a common law negligence action, a violation of a statute or ordinance designed to protect human life or property is 
prima facie
 evidence of negligence; the violation does not constitute negligence 
per se
. 
Kalata v. Anheuser-Busch Cos.
, 144 Ill. 2d 425, 434-35 (1991) (and cases cited therein).

Plaintiff (with her supporting 
amicus
) contends that a private right of action under the Act is necessary to implement the public policy behind the Act. Plaintiff argues as follows. Section 3 of the Act constitutes an unequivocal, broad prohibition of the application or use of lead-based substances. The prohibition stands whether landlords “applied” lead paint to the walls of a premises, or whether they “used” it by allowing it to remain exposed on premises walls, 
i.e.
, employing it for the purpose of covering walls. This duty that section 3 imposes on landlords is self-actuating and does not require the Department’s involvement. “How or why the lead-bearing substance got there or whether defendant knew about its existence or condition, or the presence or activity of the children is not involved.”

Plaintiff characterizes the issue of defendants’ notice of the lead hazard as a “critical” difference between her common law negligence action and her asserted private right of action under the Act. According to plaintiff: “Although prior notice of the lead hazard is a relevant concern under [plaintiff’s] negligence claims, it is not an element of liability under the [Act].”

Despite plaintiff’s arguments to the contrary, such an interpretation of the Act would render a private cause of action thereunder one for strict liability. Indeed, “strict liability” means “liability that is imposed on an actor apart from *** a breach of a duty to exercise reasonable care, 
i.e.
, actionable negligence.” W. Keeton, Prosser & Keeton on Torts §75, at 534 (5th ed. 1984). However, as we stated, the violation of a statute is not negligence 
per se
, which refers to strict liability (W. Keeton, Prosser & Keeton on Torts §36, at 227 (5th ed. 1984)), but rather only 
prima facie
 evidence of negligence (
Kalata
, 144 Ill. 2d at 434-35), unless the legislature clearly intends to impose strict liability. See 
Barthel v. Illinois Central Gulf R.R. Co.
, 74 Ill. 2d 213, 221 (1978); 
Bybee v. O’Hagen
, 243 Ill. App. 3d 49, 54 (1993); W. Keeton, Prosser & Keeton on Torts §36, at 227-28 (5th ed. 1984).

In this case, the General Assembly declined to draft the Act to impose strict liability in tort. The plain language of the Act, read as a whole, does not evince such legislative intent. 
Cf
. 815 ILCS 320/2(5) (West 1996) (Consignment of Art Act) (“The art dealer shall be strictly liable for the loss of or damage to the work of fine art while it is in the art dealer’s possession”). Rather, the Act plainly states that a failure to remove a lead hazard within the specified time frame constitutes 
prima facie
 evidence of negligence. 410 ILCS 45/15 (West 1996). Thus, if we were to create a private cause f action under the Act, it would be a negligence action and not a strict liability action. See, 
e.g.
, 
Bybee
, 243 Ill. App. 3d at 54-55. However, plaintiff already has a negligence action based on violation of the Act pending in the circuit court, which operates exactly as would a private cause of action.

This court has implied a right of action under a statute only in cases where the statute would be ineffective, as a practical matter, unless a private right of action were implied. In this case, however, a common law negligence action effectively implements the public policy behind the Act. The threat of liability is an efficient method of enforcing a statute. See 
Rodgers
, 149 Ill. 2d at 309. Further, a common law negligence action serves to make an injured plaintiff whole when a defendant fails to comply with a statute. See 
Corgan
, 143 Ill. 2d at 315. The remedy of a common law negligence action is in addition to the several remedies contained in the Act, which include the withholding of rent, relocation of the occupants of a dwelling unit containing a lead hazard, and criminal sanctions against the building owner. 410 ILCS 45/10 (West 1996).

In this case, both the common law and the Act itself provide incentives for plaintiffs to pursue remedies. We therefore conclude that the implication of a private right of action under the Act is not necessary to implement the public policy behind the Act, and that plaintiff has an adequate remedy without creation of a private cause of action under the Act. See 
Rhodes v. Mill Race Inn, Inc.
, 126 Ill. App. 3d 1024, 1027-28 (1984).

Since the fourth factor of the 
Sawyer Realty
 test is not present, we do not recognize a private cause of action under the Act. Therefore, we uphold the circuit court’s dismissal of counts III and VII. Accordingly, we reverse the appellate court, which reversed the circuit court.

II. Private Right of Action Under the City Code

Defendants contend that the appellate court erred in recognizing a private right of action for various violations of the City Code. Defendants argue that, based on the home rule provisions of our state constitution, the City Code cannot support a private right of action.

However, this court need not decide if the City Code 
can
, based on the Illinois Constitution, support a private right of action if we conclude that the City Code 
does not
 support a private right of action. We take this path. “A court will consider a constitutional question only where essential to the disposition of a case, 
i.e.
, where the case cannot be determined on other grounds.” 
Bonaguro v. County Officers Electoral Board
, 158 Ill. 2d 391, 396 (1994).

We agree with the circuit court that, as with the Act, a cause of action should not be implied under the City Code because it is not necessary to provide an adequate remedy for violations of the Code. Plaintiff’s common law negligence action pending in the circuit court constitutes an adequate remedy without need to create a private cause of action under the City Code. See, 
e.g.
, 
Thompson v. Tormike, Inc.
, 127 Ill. App. 3d 674 (1984) (applying 
Sawyer Realty
 test, court held that private cause action under ordinance  not necessary to achieve ordinance’s purpose). Therefore, we uphold the circuit court’s dismissal of counts II, IV, VI, and VIII. Accordingly, we reverse the appellate court, which reversed the dismissal.

CONCLUSION

For the foregoing reasons, the judgment of the appellate court is reversed, the judgment of the circuit court of Cook County is affirmed, and the cause is remanded to the circuit court for consideration of plaintiff’s remaining claims.

Appellate court judgment reversed;

circuit court judgment affirmed;

cause remanded.

JUSTICE HARRISON, dissenting:

As the 
amicus
 brief filed by the Illinois Trial Lawyers Association discusses, lead poisoning is one of the leading environmental health hazards facing our children. The risk of exposure is great, the difficulty of diagnosis is high, and the threat of harm is extreme. In the worst cases, lead poisoning can result in death. Even at lower levels, it can retard development and impair cognition. Its effects may be irreversible. 

The major cause of lead poisoning in children is lead paint. The poisoning occurs as the lead paint deteriorates or is removed. Although all children are at risk for lead toxicity, it affects poor and minority children disproportionately.

The City of Chicago and the State of Illinois have been at the forefront of combating the risks posed by ingestion of lead paint. For 30 years, legal advances have been made. Statutes and ordinances have be enacted and then amended as the government searches for effective means to compel landowners to maintain their property free of lead hazards. The causes of action asserted by plaintiff in this case are fully consistent with those efforts and with the precedent of this court.

It is an understatement to say that I am disheartened by the way in which plaintiff’s claims have been dismissed by my colleagues today. Despite the court’s disturbingly consistent record, I live in perpetual hope that some day, some child with a meritorious claim will be permitted by our court to have his or her pleas heard by a jury. I have begun to understand, however, that that day may not come soon.

What is most discouraging to me is the court’s growing disregard for even the most basic principles of judicial review. Adherence to the rules of court, to 
stare decisis
, to established standards of review, to express statutory language and even to basic legal reasoning seems now to have become optional. I have complained of this trend before. Today’s decision is but the most recent example. 

In upholding the circuit court’s dismissal of counts III and VII, the court writes that plaintiff should not be allowed to assert a private right of action under the Lead Poisoning Prevention Act (410 ILCS 45/1 
et seq. 
(West 1996)) because she can bring a common law tort action against defendants based on violation of that statute. The problem with this analysis, as experienced practitioners will recognize immediately, is that it is premised on a basic theoretical error. It assumes that implying of a private right of action under a statute and allowing a plaintiff to bring a common law tort action based on violation of that statute are distinct and mutually exclusive concepts. In reality, they are the same. Conceptually and as a practical matter, there is no difference. 

Our recent decisions in 
Noyola v. Board of Education
, 179 Ill. 2d 121, 129-31 (1997), and 
Lewis E. v. Spagnolo
, 186 Ill. 2d 198, 231-32 (1999) should have made this clear. Significantly, those decisions are nowhere to be found in the majority’s disposition. They are absent because the majority decided this case backwards. Instead of following the law to the proper result, it reached the result it wanted, then cobbled together some legal principles to rationalize that outcome. 

I make no pretense of being a great thinker or profound jurist, but I read the briefs and the law and I think I understand what the cases say. Illinois has long recognized the adjudicatory consequences of legislation. Our approach, which has its origins in English common law, differs from that followed by the federal courts. As in most states, we have come to view implied rights of action through the paradigm of common law tort actions. When we hold that a plaintiff has an implied right of action for violation of a statutory enactment, what we mean is that violation of that statute gives rise to an action based on the appropriate common law tort analog, such as negligence, battery, trespass, nuisance and intentional infliction of emotional distress. See, 
e.g.
, 
Lewis E. v. Spagnolo
, 186 Ill. 2d at 231 (“[A]n implied private right of action under a statute is a means by which a plaintiff may pursue a tort action. If a statute is construed as providing an implied private right of action, the plaintiff may pursue a tort action against a defendant whose violation of the statute proximately caused injury to the plaintiff”). 

As the case law has developed, the court has employed different formulations for describing the applicable principles. The connection between the concepts becomes apparent, however, when these formulations are compared. We say that a plaintiff may recover in negligence based on a defendant’s violation of a statute or ordinance (1) if the statute or ordinance was designed to protect human life or property, (2) if the plaintiff belongs to the class intended to be protected by the statute or ordinance, (3) if plaintiff’s injury is of the type the statute or ordinance was designed to protect against, and (4) if defendant’s violation proximately caused the injury. 
Noyola v. Board of Education
, 179 Ill. 2d 121, 130-31 (1997). Likewise, we hold that a private right of action will be implied under a statute (1) if the plaintiff is a member of the class for whose benefit the statute was enacted, (2) if implication of the right of action is consistent with the underlying purpose of the statute, (3) if plaintiff’s injury is one the statute was designed to prevent, and (4) if implication of an action is necessary to provide an adequate remedy for violations of the statute. 
Rodgers v. St. Mary’s Hospital
, 149 Ill. 2d 302, 308 (1992).

The parallels between these formulations derive from their common origin and theoretical basis, which we traced in 
Noyola v. Board of Education
, 179 Ill. 2d 121, 129-31 (1997), and which is discussed more fully in H. Foy, 
Some Reflections on Legislation, Adjudication and Implied Private Actions in the State and Federal Courts
, 71 Cornell L. Rev. 501 (1986), cited in 
Noyola.
 The common origin and theoretical basis of the formulations is also evident to anyone who traces back the implied right of action doctrine through cases such as 
Corgan v. Muehling
, 143 Ill. 2d 296 (1991), and
 Sawyer Realty Group, Inc. v. Jarvis Corp
., 89 Ill. 2d 379 (1982). The path will lead directly to 
Heimgaertner v. Benjamin Electric Manufacturing Co.
, 6 Ill. 2d 152, 155 (1955), which upheld the right to sue for damages for a violation of the Election Code based on the principle that “[w]hen a statute is enacted for the protection of a particular class of individuals, a violation of its terms may result in civil as well as criminal liability, even though the former remedy is not specifically mentioned therein.” 

To the extent that the courts’ formulations differ, the difference is a matter of formality rather than substance. Items two and three of the “negligence” formulation correspond, respectively, with items one and three of the implied right of action formulation. Item one of the negligence formulation has its analog in item three of the implied right of action formulation. Although item four of the negligence formulation is not included in the listing of elements for implying a private right of action, there is no doubt that a plaintiff cannot prevail based on an implied right of action theory without a showing that the statutory violation proximately caused her injury. See 
Lewis E. v. Spagnolo
, 186 Ill. 2d at 231 (and cases cited therein). Similarly, although item four of the implied right of action formulation is not included in the listing of elements for bringing a negligence action based on a statutory violation, the notion that allowing recovery is necessary in order to provide an adequate remedy for violation of the statute is implicit whenever the court holds that a plaintiff may sue in tort based on the violation of a statute. 

A useful way to think of the implied right of action formulation under Illinois law is as a generic version of the negligence formulation under which liability may be imposed based on violation of a statute using tort theories in addition to negligence, such as battery, trespass, nuisance and intentional infliction of emotional distress. In an implied right of action case, as under the negligence formulation, the statute does not fix all of the elements of the cause of action. Rather, it serves to define the duty or standard of care owed by the defendant. The remaining elements for recovery in tort must still be established.

Under these circumstances, it makes no sense to hold, as the majority does now and as the circuit court did below, that we should not imply a private right of action under the Lead Poisoning Prevention Act because plaintiff may assert a common law negligence claim based on violation of that Act. If plaintiff has a viable negligence claim for violation of the Act, it is because we are willing to imply a private right of action under the statute. If we are willing to imply a private right of action under the statute, it means that plaintiff has a viable negligence claim for violation of the Act. 
Bier v. Leanna Lakeside Property Ass’n
, No. 2–98–0331 (March 3, 1999), a recent appellate court decision, illustrates this point.

In fairness, plaintiff herself is partly to blame for the confusion. Her complaint is drafted so that it contains both common law negligence counts alleging violation of the Act (counts I and V) and counts seeking damages based on defendants’ breach of duty under the Act (counts III and VII). With respect to the Act and defendants’ liability for its violation, however, there is no substantive difference between the allegations in the various counts. The same statutory violations alleged in counts III and VII are included among the violations cited as grounds for relief in counts I and V. Counts III and VII are simply a subset of the allegations in counts I and V, set apart and restated. Accordingly, an argument can be made that counts III and VII should be stricken on the grounds that they are redundant and constitute nothing more than surplusage. Those counts are not subject to challenge, however, on the grounds that they fail to state a cause of action.

The majority’s handling of plaintiff’s claims based on violation of Chicago’s Municipal Code suffers from the same infirmity. There is no dispute that municipal ordinances can establish a duty of care, violation of which can give rise to liability in tort. See, 
e.g.
, 
Noyola v. Board of Education
, 179 Ill. 2d at 130; 
Martin v. Ortho Pharmaceutical 
Corp., 169 Ill. 2d 234, 240 (1996); 
Kalata v. Anheuser-Busch Co.
, 144 Ill. 2d 425, 434 (1991); 
French v. City of Springfield
, 65 Ill. 2d 74, 79 (1976). Because we allow plaintiffs to sue in tort based on violation of a municipal ordinance, it is erroneous to say that an ordinance cannot serve as the basis for an implied private right of action. As in the case of statutes, there is no practical difference under Illinois law between allowing tort recovery based on an ordinance violation and implying a private right of action under the ordinance. It amounts to precisely the same thing. As a result, if there is any flaw in plaintiff’s attempt to assert an implied private right of action, it is that the claim merely duplicates the corresponding paragraphs in her common law negligence counts.

As basic as these mistakes are, they are not the only problems with my colleagues’ analysis. The 
Sawyer Realty
 test, upon which the majority basis its decision, pertains only to implied rights of action. It has no bearing on the viability of express rights of action. As even a cursory examination of the pleadings reveals, however, plaintiff has asserted an express right of action under Chicago’s Municipal Code in addition to an implied right of action. Specifically, plaintiff seeks recovery under section 5–12–110(e) of the Code, which expressly allows tenants to “recover damages by claim or defense” when the landlord is in material noncompliance with the rental agreement or section 5–12–070 of the Municipal Code, the ordinance provision that requires landlords to maintain premises in compliance with the applicable provisions of the Municipal Code, including the ordinances prohibiting the use of lead-bearing substances in dwelling units. 

Because plaintiff has asserted an express right of action under the Municipal Code, as well as an implied one, the 
Sawyer Realty
 test would not be dispositive of the entire case even if the majority’s application of that test were correct. With respect to plaintiff’s express right of action, an issue would still remain as to whether allowing recovery under the Code provisions invoked by plaintiff would violate the home rule provisions of the Illinois Constitution. If the court reached this issue on the merits, as it should, it would have to conclude that no constitutional violation exists. 

Under the Illinois Constitution of 1970, home rule units can basically do anything the state can do. Ill. Const. 1970, art. VII, §6. Their powers and functions are to be construed liberally (Ill. Const. 1970, art. VII, §6(m); 
City of Chicago v. Roman
, 184 Ill. 2d 504, 513 (1998)), and they have “the broadest powers possible” (
Scadron v. City of Des Plaines
. 153 Ill. 2d 164, 174 (1992)). Included among their powers is the power to enact ordinances designed to protect public health, safety, morals and welfare. Ill. Const. 1970, art. VII, §6(a).

This grant of power has been construed to encompass the power to regulate the relationship between landlords and tenants. In particular, home rule units have been held to have the power to enact ordinances which govern the termination of tenancies and provide for recovery of civil damages (
City of Evanston v. Create, Inc.
, 85 Ill. 2d 101 (1981)), impose restrictions for the eviction of tenants (
City of Evanston v. O’Leary
, 244 Ill. App. 3d 190 (1993)), and allow plaintiffs to recover damages from landlords who take retaliatory action against them (
Reed v. Burns
, 238 Ill. App. 3d 148 (1992)). There is no legitimate basis for distinguishing those situations from the one before us here. 

It is true that matters of statewide interest may be so compelling as to preclude home rule power, but the mere existence of state interest and activity in a particular field does not preclude home rule activity absent legislative action to limit or exclude home rule power or to declare it one of exclusive state control. We said so specifically in 
City of Evanston v. Create, Inc.
, 85 Ill. 2d at 113, where we upheld the right of home rule units to enact landlord-tenant ordinances containing provisions authorizing recovery of damages. In the matter before us today, the legislature most definitely did not act to limit or exclude home rule power. To the contrary, when the legislature enacted the Lead Poisoning Prevention Act, it specifically provided that the legislation was not to be “interpreted or applied in any manner to defeat or impair the right of any person *** to maintain an action or suit for damages sustained or for equitable relief, or for violation of an ordinance” in connection with any violation of the Act and that the Act “shall not prohibit any city *** or other political subdivision from enacting and enforcing ordinances establishing a system of lead poisoning control which provide the same or higher standards than those set forth in this Act.” 410 ILCS 45/15 (West 1996). In light of these provisions and our own precedent, it is clear that Chicago did not overstep its authority in enacting the ordinances at issue here.

For the foregoing reasons, I would affirm the judgment of the appellate court. I therefore dissent.